LEPIZZERA · LAPROCINA
COUNSELLORS AT LAW

Michael J. Lepizzera Jr. †
Paul N. Laprocina Jr. †
Christopher F. DePalo †*^
Christian C. Potter †*
Thomas J. Marks †*
Alan G. Trebat *
Scott K. DeMello *

† admitted in RI
* admitted in MA
^ admitted in NH

April 10, 2006

Robert S. Simon, Esq.
P.O. Box 820035
Portland, Oregon 97282-1035

***Re:*** ***<u>Grand Heritage Management, LLC. vs. Jay DiGiulio</u>***
***Case Number: 3:06-cv-248-BR***

***<u>Grand Heritage Management, LLC. vs. Michael Murphy</u>***
***Case Number: 3:06-cv-249-MO***

Dear Mr. Simon:

This will serve to confirm that I represent the interests of Vanderbilt Hall L.P., Michael Corso, Arnold B. "Buff" Chace, Jr. and Cornish Associates[1]. I write to you concerning a barrage of "so-called subpoenas"[2] you purportedly issued in your capacity as attorney of Grand Heritage Management, LLC in the above-entitled matters pending in the United States District Court for the District of Oregon. This letter shall serve as our formal objections to the relevant subpoenas and to otherwise inform you that no appearance will be made or documents produced as requested in the subpoenas.[3]

---

[1] Although I do not believe Cornish Associates has been issued a subpoena, I note the reference "*c/o Cornish Associates*" you inserted in the subpoenas issued to Mssrs. Corso and Chace. To be perfectly honest with you, I am not exactly sure what the significance of this clause means.

[2] It will become readily apparent to any trained legal reader of this correspondence as to why I have chosen to describe the "paperwork" you served on my clients as "so-called subpoenas". I do not issue these characterizations lightly. My clients and I certainly respect the legal process. However, your apparent lack of understanding of (i) the federal rules of civil procedure; the local rules of practice governing the District of Oregon; and (iii) basic, fundamental rules of candor governing the practice of law leaves me with no other choice but to make this characterization. For simplicity sake, I will refer to the "paperwork" as subpoenas in the remainder of this letter. Make no mistake about this reference however. I certainly call into question the validity of these subpoenas.

[3] I certainly will make myself available to discuss in good faith the issues surrounding the subject subpoenas in an attempt to avoid litigation over this matter.

301 Metro Center Blvd., Suite 102, Warwick, Rhode Island 02886 · Tel. 401.739.7397 · Fax 401.384.6950
980 Washington Street, Suite 218, Dedham, Massachusetts 02026 · Tel. 781-329-0300 · Fax 781-329-0388
www.lldlawyers.com

On or about March 31, 2006, you caused subpoenas to be served on my clients[4] commanding them to appear at the offices of Shechtman Halperin Savage, LLP on April 11, 2006 for the purpose of producing certain documents. The subpoenas required the following persons to appear:

1) Michael Corso at 9:00 am
2) Arnold B. "Buff" Chace, Jr. at 9:00 am
3) Vanderbilt Hall LP at 3:30 pm.

A total of six (6) subpoenas were served. Each of the persons or entities set forth above was served with two (2) subpoenas. The individual subpoenas served upon each of my clients appear to be identical in nature[5]. I assume you issued two (2) separate subpoenas for each client in light of your decision to file separate civil actions against Mr. DiGiulio and Mr. Murphy.[6]

The applicable subpoenas are deficient for a number of reasons. First and foremost, the subpoenas were issued by the *United States District Court for the* ***District of Oregon***.[7] Mssrs. Corso and Chace and Vanderbilt Hall were served in the District of Rhode Island. The subpoenas seek the production of materials from witnesses who reside, work and are located in the District of Rhode Island. These witnesses are clearly all beyond the territorial reach of the District of Oregon.

[4] I have not yet had the time or the opportunity to investigate whether service was properly made upon my clients. I reserve the right to do so if we are reach an impasse and the court is required to intervene.

[5] I note that each of the six (6) subpoenas were accompanied with a check made payable to the witness in the amount of fifty dollars ($50.00). The checks were issued from a Grand Heritage Management, LLC checking account. I do not know if this is proper. Notwithstanding, I will represent to you that I am in possession of the checks. My clients have no intention of endorsing or cashing those checks.

[6] I have not reviewed the pleadings filed by Grand Heritage Management, LLC in these matters but my limited understanding of the underlying facts in support of the lawsuits leads me to believe these matters should be litigated in the same proceeding. I will leave the Oregon litigation to the court and the litigants. Nonetheless, it seems highly likely that the two (2) cases will be consolidated in the interests of judicial economy and to avoid the distinct possibility of inconsistent results.

[7] I use the words "issued by" because this is the language that appears at the top of each of the six (6) subpoenas. I understand this is the language contained in the general forms provided by the court. Notwithstanding, this reference to "issued by" is somewhat of a misnomer because the court did not issue the subpoenas in dispute here.

The subpoenas therefore can not be issued "from" the District of Oregon but instead must issue "from" the district court of the district in which the deposition or production is sought. The subpoenas must be issued out of the District of Rhode Island.[8] My clients are not subject to the jurisdiction for the District of Oregon and therefore the subpoenas you issued are *void ab initio* and otherwise invalid. The only fair reading of the Federal Rules of Civil Procedure and the applicable case law tells me that a subpoena can not issue out of the District of Oregon for any of my individual clients under the current set of facts.[9]

Putting the jurisdictional issue aside for the moment, the subpoenas are also improper and unfounded because you did not possess the requisite authority to issue the subpoenas in the first place. Although I am not admitted to practice in the Federal District Court in Oregon, I have taken the opportunity to review the relevant local rules governing the practice of law in the District of Oregon. Not surprisingly, those local rules - especially the ones governing a parties' right to conduct discovery - are similar to the local rules for the District of Rhode Island. As I read the local rules, District of Oregon Local Rule 26.1 requires a Fed. R. Civ. P. 26(f) initial conference to take place before any party may seek discovery. I understand that this initial conference has not yet taken place in either the DiGiulio or Murphy case. Therefore, if I am reading the applicable local rules correctly, you have not been given the green light by the District Court in Oregon to conduct any discovery including the right to issue subpoenas.[10]

I conferred briefly with defense counsel (Kenneth Davis) representing Mssrs. DiGiulio and Murphy. Mr. Davis was quite surprised to learn – as was I - that he was not given notice of the subpoenas. Mr. Davis had no idea that you had issued subpoenas for my clients never mind the premature return date of April 11. He had no idea that you were attempting to conduct formal, extra-territorial discovery in the District of Rhode Island although the Rule 26(f) initial conference had not yet taken place in the District of Oregon.

The applicable rules certainly require you to give notice to opposing counsel. I

---

[8] This is pure common sense. The court "from" which the subpoena issues is the court with the requisite jurisdiction to either enforce the subpoena or to hear motions for a protective order filed in response to service of the subpoena. My clients are certainly not obligated nor should they be burdened with the task of traveling to Oregon to be heard on this issue.

[9] Cusumano v. Microsoft Corp., 162 F.3d 708, 711 (1st Cir. 1998).

[10] As you should know, plaintiff's counsel is also required to initiate discovery communications with counsel for the defendants upon learning of counsel's identity. All counsel are next required to confer pursuant to Fed. R. Civ. P. 26(f).

understand that you are fully aware of Mr. Davis' role as counsel to the defendants in these two (2) legal matters. I find it troubling that you failed to notify opposing counsel of the subpoenas. For this reason alone, the subpoenas are objectionable and should be stricken.[11] Counsel for Mssrs. DiGiulio and Murphy undoubtedly have a right to be heard on the propriety and scope of these subpoenas. They certainly have a right to have counsel appear in the District of Rhode Island to participate in these extra-territorial proceedings in any manner they deem necessary. I will not idly participate in tainted proceedings where you have failed to notify the very parties you haled into court.[12]

I am also troubled with the return date of the subpoenas for two (2) reasons. First, I do not believe you have afforded my clients with reasonable time to respond to the subpoena as required by Fed. R. Civ. P. 45. The subpoenas were served on Friday, March 31, 2006. You allowed my clients a mere eleven (11) days to respond to the subpoena. I note that four (4) of the eleven (11) days constitute weekend days.

Admittedly, the rule does not set forth a hard and fast rule on the number of days the party issuing the subpoena must give a subpoenaed party to respond. The rule does however require the issuing party to allow a reasonable time for compliance. I would submit that we have not been provided reasonable time to comply in this case. The parties were required to locate and retain counsel. From my calculation, the individual clients have been asked to produce a horde of documents covering from what I have deduced as some twenty-eight different categories of documents. My clients have not been given ample time to search their records to determine what records, if any, would be responsive to the subpoena. The clients have not been given adequate and sufficient time to produce those documents to the undersigned in order to allow counsel sufficient time to review the documents and to properly advise the clients.

Your shotgun approach in issuing these subpoenas also leads me to believe that I will be required to assert a number of privileges on behalf of my clients. The first privilege I suspect will be the issue of litigation is the attorney-client privilege. You have knowingly and intentionally elected to issue a subpoena to an attorney, Mssr. Corso, who serves as counsel to the other two (2) subpoenaed parties, Vanderbilt Hall and Mssr. Chace. The issuance of such a subpoena is problematic on its face and requires counsel for the subpoenaed parties to take the appropriate measures to ensure the clients'

[11] At first blush, I thought your failure to contact opposing counsel constituted an *ex parte* communication. However, this characterization is not entirely correct because not only did you fail to communicate with opposing counsel but you also failed to communicate with the court as you had no authority to issue the subpoenas in the first place. I submit that the issuance of these subpoenas is tantamount to you issuing subpoenas on your own accord without the benefit of any pending litigation.

[12] I must represent to you that Mr. Davis wishes to be heard on the issue of the subpoenas and the discovery you seek from my clients.

privileges are not waived. You are not permitted to delve into the confidential attorney-client communications between Mssr. Corso and his clients. The broad scope of your subpoena attempts to do just that.[13] Without having the benefit of collecting and reviewing the relevant documents, I am not in a position to properly confer with and advise my clients on your apparent attempt to violate this sacrosanct privilege.

I am also troubled with your April 11, 2006 return date because I firmly believe that you are attempting to accomplish an end-run around the applicable court rules. I understand that neither defendant has filed a responsive pleading to the complaint served upon them. I further understand that the defendants' answers are not due until April 11, 2006. I find it hard to believe it is a mere coincidence that you imposed a return date of April 11, 2006 for the subpoenas when the defendants are not required to respond to the complaint until April 11, 2006. Were you hoping to be lucky enough for Mssrs. Corso, Chace and Vanderbilt Hall to simply produce documents in response to what appeared to be a validly issued subpoena? Were you thinking: "*Gee, maybe I will collect some documents that may or may not be helpful to my case in this inappropriate manner and deal with the consequences later.*" Was your client thinking: "*I don't care about the litigation. I just want to see the confidential, proprietary documents of Buff Chace to see what type of business he is conducting and the only way for me to see these documents is through litigation.*" Quite frankly, what were you and your client thinking?

Your client's recent, erratic actions and statements in trying to secure a certain contract with Vanderbilt Hall, LP and to otherwise block Vanderbilt's ability to carry on business discussions with DiGiulio and Murphy is also very telling.[14] One can only conclude from your client's behavior and the unlawful manner in which you issued the subpoenas that Grand Heritage and John Cullen are trying to gather my clients' confidential, proprietary information through fallacious means at the expense of my clients, the opposing parties in the District of Oregon litigation and the federal district court. This is just not right.

To make matters worse, it also appears that your lawsuit may have other significant, procedural deficiencies. Again, I do not pretend to know all the facts of your case, but I understand your lawsuit in the District of Oregon may be short lived as the court may not have personal jurisdiction over the defendants. Without personal jurisdiction, the District Court in Oregon would be powerless to hear and decide the case. The court would likely decide the jurisdictional issue first before allowing the parties to

[13] More specifically, item number 1 is drafted in an overly broad manner which would cover communications between attorney and client.

[14] I do not intend to address at this time the particulars of your client's obsession with Vanderbilt cutting off business discussions with DiGiulio and Murphy with no legitimate business purpose in mind.

conduct discovery on the substantives issues. This is the precise reason why the federal district courts require the scheduling conference to take place before allowing the parties to conduct discovery. It would be a complete waste of judicial resources for the parties to engage in expensive and cumbersome discovery if there was a fundamental question of jurisdiction hanging in the balance.

My clients have not had the opportunity to collect documents responsive to the subpoena so I am therefore not in position to discuss the particular objections I may have to assert on their behalf. I reserve the right to present specific objections in the future after I have an opportunity to review the relevant documents and discuss the matter with my clients. Aside from the attorney-client privilege, I can tell you that my understanding of the documents you seek to be produced are indeed confidential, proprietary business records which are protected from disclosure. My clients enjoy a right of financial privacy in their business records and business practices. It is unclear to me what legal rights or interests your client possesses to overcome my clients' right to privacy. I think the burden is on your client to articulate the reasons why disclosure should me made in this case before any documents are produced.

Finally, your client should reconsider his tactics in causing unnecessary legal conflicts with my clients. Although I have not been retained as of yet to deal with other legal issues that may exist between the parties, Mssr. Cullen should tread lightly in terms of creating unnecessary, adversarial positions with Mssr. Chace. I understand that they are partners with one another in at least one other joint business venture. As business partners, Mssrs. Cullen and Chace owe one another a duty of loyalty. I question whether Mssr. Cullen is truly honoring his fiduciary obligations when he is knowingly and intentionally taking an antagonistic position against his partner for no legitimate purpose. You should probe your client as I am referring to much more than the issuance of the subject subpoenas.

Please feel free to contact me at any time regarding this matter. I would be more than willing to discuss the procedural and substantive issues concerning the relevant subpoenas prior to any litigation taking place. Unless I hear from you, I will assume that you have elected to forego the production of any documents in response to your "so-called" subpoenas.

Respectfully submitted,

Michael J. Lepizzera, Jr.

cc: Douglas A. Giron, Esq. (via facsimile only @ 401.272.1403)
Kenneth Davis, Esq. (via facsimile only @ 503.778.2200)